Filed 10/31/24  In re S.O. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re S.O. et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>R.R.,<br><br>    Defendant and Appellant. | A169246<br><br>(Alameda County Super. Ct. Nos. JD03680101 & JD03680201) |

After S.O. and T.O., aged three and two, were found locked in a room in a house without electricity, food, or any adult present, the Alameda County Social Services Agency (Agency) removed them from the custody of R.R. (Mother).  The juvenile court awarded custody to V.O. (Father), the previously noncustodial parent, who lives out of state; terminated dependency jurisdiction; and denied Mother's request for phone or video visitation.  The court found that such visits would be detrimental and signed an order drafted by counsel stating that substance abuse had led Mother "to act violently and neglectfully towards the children."  Mother contends the court erred in denying visitation, as no one alleged she had been violent towards the children and there is no substantial evidence of detriment.  But

1

the court did not need to find detriment to deny visitation, and its ruling was not an abuse of discretion. We modify the order to clarify that the reference to Mother having acted "violently" was not directed at the children; rather, she had acted violently towards Father and neglectfully towards the children. We affirm the order as modified.

## FACTUAL AND PROCEDURAL HISTORY

### 1. Initiation of the Case

In October 2023, Oakland police officers responded to a report that Mother had left the children alone overnight. The officers found the children locked in a room with no working doorknob. Mother returned and said she had been gone only briefly. The next day, a social worker visited the home and found it had no electricity, refrigeration, or food, and the room in which the children were found was cluttered with unsafe objects and lit by Christmas lights attached to a car battery. S.O. said Mother left her and T.O. alone for long periods.

The Agency took protective custody of the children, placed them with maternal aunt S.R., and filed a dependency petition. The petition alleged the children were subject to dependency jurisdiction because of a serious risk they would suffer physical harm or injury as a result of Mother's failure to supervise them (Welf. & Inst. Code, § 300, subd. (b)(1)(A)),[1] and because Mother had left them with no provision for support (*id.*, subd. (g)).

The detention report stated that the home where the children were found is known to the police as a chop shop and site of criminal activity. The report noted allegations that Mother used methamphetamine and heroin. Father was reached by phone and said he would like to care for his children but had moved out of state because Mother had put a gun to his head and

___

[1] Undesignated references are to the Welfare and Institutions Code.

had induced her friends to beat him up.  At the time, Father's paternity status had been alleged but not presumed.  Regardless, if the children were detained, the Agency planned to arrange supervised visitation for Mother.

The juvenile court ordered the children detained and set a jurisdiction/disposition hearing three weeks later, on November 9, 2023.

### 2.  The Initial Jurisdiction/Disposition Hearing

The Agency's report for the November 9 hearing recommended that the court either declare the children dependents and order reunification services for Mother or, if the court found Father to be the presumed father, release the children to his care and dismiss the case with a custody and visitation order (often called an "exit order").  The report said Mother's whereabouts were unknown; records showed she had been arrested on November 5.

The report noted that, in a "Child and Family Team" (CFT) meeting the day the children were removed, S.R. said the children had been crying and missing Mother.  A day later, S.R. reported that Mother had come to S.R.'s home but "stayed for only two minutes."  S.R. said Father was a good parent who had been forced to move after assaults and threats by Mother and her friends.  S.R. described Mother as "violent" and said she had been violent to Father; S.R. did not represent that Mother had been violent towards the children.

The Agency telephoned Mother to participate in a CFT meeting two weeks later, but she did not answer; S.R. said she was in jail.  S.R. said the children had adjusted well to her home, and she hoped they ended up with Father.  Father hoped to bring the children to live with his family—mother, stepfather, and siblings—out of state.  Father said he left California in 2022 after Mother's friends hit him with a gun and broke his arm.  Father stated he saw methamphetamine and cocaine in Mother's backpack and believed she

was in the Norteño gang.  The local social services agency had agreed to assess Father's home for placement but had not yet done so.

The Agency submitted a proposed exit order under section 362.4 that terminated dependency jurisdiction, awarded custody to Father as a formerly noncustodial parent, and gave Mother supervised visitation.

At the November 9 hearing, Father appeared; Mother did not.  Father submitted an acknowledgment of paternity.  The court deemed him a presumed father; stated that it was inclined to release the children to his custody, subject to the local social services agency's assessment of his home; and continued the hearing for three weeks.

### 3.  The Final Hearing, Oral Argument, and Exit Order

For the November 28 hearing, the Department submitted five police reports, which the court admitted into evidence.  Two were from October 2023, when officers found the children and, the next day, accompanied a social worker inspecting the home.  A third was from 2019, before the children were born, and described Mother's arrest for vandalism and domestic violence after she allegedly got drunk, tried to choke Father, and broke a window.  The fourth report was from 2020, when S.O. was an infant. Police came to Mother's home after reports of a woman firing a gun in the air. Mother said her brother had left a gun with her, and she had put it in a drawer in S.O's room.  Mother denied having fired the gun, but she resembled the woman seen firing a gun on nearby security camera footage.  In the fifth report, also from 2020, Father claimed that, during an argument, Mother punched him, broke a window, and, when he dropped his keys, drove off in his truck.  In contrast, Mother said Father had hit her first and let her drive the truck.

At the November 28 hearing, Father appeared; Mother again did not. Mother's counsel said she had not made contact with Mother.  The Agency's

4

counsel, noting that the Father's home had been approved, renewed the request to release the children to his custody.  The Agency's counsel also asked the court to modify the proposed order by deleting the visitation term.  Given the distance to Father's home and the "new information contained in the police report[s] about the level of danger to the children," the Agency no longer believed in-person visitation was in the children's best interest.  It requested instead "an order either finding a detriment . . . [or] allowing for other forms of supervised contact such as video or telephone contact."

After confirming Mother was no longer incarcerated, the court found clear and convincing evidence of a need to remove the children from Mother's custody.  It approved placement with Father as a previously noncustodial parent and invited argument on whether visitation would be detrimental.

Agency counsel stated that exposing the children, even by supervised visitation, "to the violence of the mother and what appears to be an ongoing substance use concern does not seem consistent with the children's best interests."  The children's counsel was ambivalent:  He noted the report from the first CFT meeting represented the children missed Mother but found the violence alleged in the police reports troubling.  Ultimately, he recommended visitation using "methods of supervision . . . to protect the safety of the children and the father such as video visits or [visits] through a third-party agency."  Mother's counsel requested supervised video or phone visits.  Father's counsel began to argue against any visitation, noting the need to keep Father's location confidential, but the court interjected that it was "very difficult . . . to weigh all of these factors here in the total absence of Mother during the proceedings."

The court then noted its own ambivalent views:  "The Court wants to be sensitive to this notion that the children crave contact with their mother.  A

detriment finding, granting custody to the noncustodial parent in a different state would effectively cut Mother out of the picture pretty much entirely. [¶] And I think that there is sufficient information here for a detriment finding. Mother's behavior has been very erratic. She's been heavily involved in criminal activity, to the extent that it has impacted the children. It's impacted her ability to provide care. The home was described as deplorable. The children were locked in a room . . . overnight . . . completely unattended. And there are, of course, substance abuse concerns. [¶] I think I've just talked myself into a detriment finding. I hesitate . . . because there was a history of violence here directed against Father. I don't recall that she was ever known to be directly violent with the children."

At that point, the children's counsel stated that he opposed a detriment finding because no one alleged Mother had been violent to the children or to Father in their presence. No one disputed his assertion, and the court replied, "I tend to agree with your comments. I was about to go down that road myself."

The court ruled as follows: "I am making the detriment finding today. And the factor that pushes it over for me here is the fact that I don't know anything about Mother's present circumstances. All I know is . . . this pattern of erratic behavior, the history of violence, history of involvement with criminal activity including firearms that are stashed in the children's bedroom. Recent arrests. No presence here during the full extent of the proceedings so far. [¶] I'm left with a . . . black hole of information here in the landscape that I'm trying to assess. And, on balance, I think that contact with Mother would be detrimental to the children. Because I just don't know enough about why that would be not the case. [¶] I've considered the request here for video visits. They could be supervised by Father. I've considered the

6

notion of a third-party agency supervising the visits. But the Court's orders today are fairly drastic; right? The children are moving off to a different state. I don't know how we can arrange for those things and maintain Father's confidentiality at the same time. [¶] Mother, if her circumstances change or she wishes to demonstrate why she's entitled to visits, would have the opportunity to do that as soon as this case is closed out. But in the absence of hearing anything from her or knowing anything about her, all of this negative information weighs just enough in favor of making that detriment finding. And so that's the order of the Court today."

The court directed the Agency to submit an order consistent with its ruling. The Agency submitted an order awarding legal custody to both parents and physical custody to Father alone. It added a form "Reason for No or Supervised Visitation—Juvenile" attachment on which it wrote, "At the hearing . . . , the Court made a detriment finding regarding the children visiting with their mother. There is no contact allowed between the mother and the children due to an established pattern of substance abuse by the mother, *which has led her to act violently and neglectfully towards the children.* The concerns around her substance use, parenting practices, and anger/impulse management have not yet been mitigated." (Italics added.) The court signed the order without change.

## DISCUSSION

Mother does not challenge the decision to award custody to Father; she contends only that the court erred in finding visitation would be detrimental, and specifically in finding she had acted "violently . . . towards the children."[2]

---

[2] Mother complains, without citing dependency authority, that the only evidence the court had was the Agency's reports. But section 358 requires a juvenile court to receive an agency's reports into evidence, which is presumably why Mother's counsel did not object to the reports below.

The parties dispute the standard of review. There is a split of authority as to the standard of review for a finding that visitation would be detrimental. (*In re Matthew C.* (2017) 9 Cal.App.5th 1090, 1101, fn. 7.) But that dispute is irrelevant here, for the parties are mistaken in their assumption that a juvenile court must find detriment before it can deny visitation when it issues a section 362.4 exit order awarding custody to a previously noncustodial parent, as here. In fact, "Section 362.4 does not require a finding of detriment under any circumstances." (*In re J.M.* (2023) 89 Cal.App.5th 95, 113 (*J.M.*).)

Our standard for evaluating an order issued pursuant to section 362.4, including a provision denying visitation, is simply whether the juvenile court abused its discretion in crafting an order in the children's best interests. (*J.M.*, *supra*, 89 Cal.App.5th at pp. 112–113.) " '[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case (§ 362.4).' [Citation.] We review the juvenile court's exit orders for an abuse of that discretion. [Citations.] We will not disturb the juvenile court's decision 'unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' (*In re Stephanie M.* [(1994)] 7 Cal.4th [295,] 318.)" (*J.M.*, at pp. 112–113 [bracketed insertion by *J.M.*].)

In *J.M.*, *supra*, 89 Cal.App.5th 95, the Second District recently held that section 362.4 does not require a juvenile court issuing an exit order to make a detriment finding "under any circumstances." (*J.M.*, at p. 113.) The juvenile court assumed jurisdiction of two children under section 300 and removed them from their parents' custody. (*J.M.*, at p. 98.) The *J.M.* court then returned the children to parental custody for family preservation services but ultimately terminated jurisdiction after a section 364 review

8

hearing.[3] (*J.M.*, at p. 98.) In the accompanying exit order issued pursuant to section 362.4, the court granted Mother sole physical custody with visitation to Father. (*J.M.*, at p. 98.) On appeal, Father made an argument similar to Mother's argument here—that the juvenile court erred in denying him custody without finding that his custody would be detrimental. (*Ibid.*) Father argued that section 361 required such a finding to deny him custody. (*J.M.*, at p. 98.)

That argument failed because, as the Second District explained, section 361 requires a court to find detriment before *removing* a child from parental custody; it does not apply "to custody and visitation determinations made at a section 364 review hearing concurrent with the termination of juvenile court jurisdiction." (*J.M.*, *supra*, 89 Cal.App.5th at p. 113.) "Instead, section 362.4 governs the court's authority to issue exit orders determining custody and visitation . . . when terminating jurisdiction at a section 364 hearing. [Citations.] Section 362.4 does not require a finding of detriment under any circumstances; as a result, courts have applied the best interest standard in determining appropriate custody and visitation exit orders at this stage." (*J.M.*, at p. 113.)

Here, there is no dispute that the juvenile court issued the order granting custody to Father, denying Mother visitation, and terminating dependency jurisdiction pursuant to section 362.4.[4] The question is whether

---

[3] Section 364 authorizes periodic review hearings after a court assumes jurisdiction under section 300 but does not remove a child from their parents' physical custody. (§ 364, subd. (a).) At such hearings, the court either orders continued supervision or terminates dependency jurisdiction. (*Id.*, subd. (c).)

[4] Mother's brief on appeal recognizes that the court issued the exit order under section 362.4. The record confirms this. A court must issue a section 362.4 order on Judicial Council form JV-200 (Cal. Rules of Court,

9

the fact that the court issued the order at a different type of hearing than in *J.M.* mandates an exception to the rule that "Section 362.4 does not require a finding of detriment under any circumstances." (*J.M.*, *supra*, 89 Cal.App.5th at p. 113.) As set forth below, nothing about the type of hearing distinguishes this case from *J.M.* Accordingly, section 362.4 did not require the court to find that visitation would be detrimental before declining to provide visitation in its section 362.4 order; instead, the court had discretion to order visitation or not based on the children's best interests. (*J.M.*, at pp. 112–114.)

To explain the applicability of the best interests standard, we review the relevant statutory scheme. Section 361 authorizes a juvenile court to remove a minor adjudged a dependent under section 300 from the physical custody of parents with whom the child was living when a dependency petition was filed but only if the court finds clear and convincing evidence of one of several detrimental circumstances, as the court did here. (Compare § 361, subd. (c)(1), (5) [grounds for removal] with § 300, subds. (b)(1) & (g) [grounds for jurisdiction here].)

Section 361.2 qualifies the juvenile court's authority under section 361. It states, "If a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume

---

rule 5.700(b)), and the court here did so. A notice in the order states, "The juvenile court has terminated jurisdiction over the children listed . . . . [¶] All requests for modification or termination of these orders must be brought in the family court case in which these orders are filed." The order includes directions to the clerk to ensure such filing in accord with the requirements of section 362.4. (See § 362.4, subds. (b)–(d).)

10

custody . . . . If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to . . . the child." (§ 361.2, subd. (a).) That is what the court did here when Father, the previously noncustodial parent, requested custody of the children, and the court found that his custody would not be detrimental.

Section 361.2 provides that a court ordering children placed with a noncustodial parent may do so in one of three ways, of which the court here chose the first: "(1) Order that the parent become legal and physical custodian of the child. *The court may also provide reasonable visitation by the noncustodial parent.* The court shall then terminate its jurisdiction over the child. . . . [¶] (2) Order that the parent assume custody subject to the jurisdiction of the juvenile court and require that a home visit be conducted within three months [after which the court again chooses one of the three options]. . . . [¶] (3) Order that the parent assume custody subject to the supervision of the juvenile court. In that case the court may order that reunification services be provided to [either or both parents] . . . ." (§ 361.2, subd. (b)(1), (2) & (3), italics added.)

Whenever a juvenile court terminates dependency jurisdiction— whether pursuant to section 361.2, as here, or in other contexts, as in *J.M.*— section 362.4 authorizes it " 'to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court.' " (*In re Chantal S.* (1996) 13 Cal.4th 196, 202–203.) Section 362.4 states that when "the juvenile court terminates its jurisdiction over a [dependent] minor. . . the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child." The order "shall be filed in [any existing family law proceeding] at the time the juvenile court terminates its jurisdiction over

11

the minor, and shall become a part thereof. [¶] (c) If no action is filed or pending relating to the custody of the minor . . . , the juvenile court order may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides." (§ 362.4, subds. (a)–(c).)

Two aspects of section 361.2, subdivision (b)(1) (section 361.2(b)(1)), dictate that when a juvenile court issues an exit order unconditionally awarding custody to a previously noncustodial parent, as here, the court need not find detriment to deny the newly noncustodial parent visitation. First, section 361.2(b)(1) states simply that, "The court *may* also provide reasonable visitation by the noncustodial parent" (§ 361.2(b)(1), italics added) without imposing conditions on the court's discretion. Second, section 361.2(b)(1) does not authorize the court to order reunification services for a noncustodial parent like Mother. (*Ibid*.) Thus, visitation is not presumptively necessary to support reunification efforts.

Mother's arguments assume that dependency law requires visitation by default in all contexts and hence always requires a finding of detriment to deny visitation, but that is true only in specified circumstances. The most common is when visitation supports reunification efforts. Section 362.1 provides that, "In order to maintain ties between the parent . . . and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent, . . . any order placing a child in foster care, . . . and ordering reunification services, *shall provide*" for visitation "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A), italics added; see also *id.*, subd. (a)(1)(B) ["No visitation order shall jeopardize the safety of the child"]; *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426 [visitation is "an essential component of a

12

reunification plan" and must be provided to "promote reunification"].) In addition, the provisions authorizing a juvenile court to terminate reunification services and set a section 366.26 permanency hearing require the court to allow the parent(s) facing a loss of parental rights to continue visiting a child pending the hearing "unless it finds that visitation would be detrimental to the child." (§§ 366.21, subd. (h); 366.22, subd. (a)(3).)[5]

As such provisions show, when the Legislature intends to require that a court make a detriment finding before denying visitation, it knows how to do so. When it enacted the provisions now at issue—section 361.2(b)(1) and section 362.4—the Legislature did not require a detriment finding to enable a denial of visitation. Thus, a court need not make one. (See *In re Chantal S., supra*, 13 Cal.4th at p. 206 [Family Code provision did not apply to visitation order in dependency case; "the Legislature knows how to make the Family Code applicable to the juvenile court when it intends to do so"].)

It makes sense that a court may, in a case like this, decide custody and visitation "based on the best interests of the child without any preferences or presumptions." (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 [analyzing § 362.4 discretion], overruled in part on other grounds by *In re Claudia E.* (2008) 163 Cal.App.4th 627, 636.) Unlike an order continuing dependency proceedings that may result in a termination of parental rights, the award of custody to Father here eliminated any present risk of Mother having her rights terminated and irrevocably losing the ability to seek

---

[5] Such visitation can ease the transition to a permanent plan involving no contact and/or enable a parent to preserve their ability to show, at the section 366.26 hearing, that the case falls within the beneficial-relationship exception to the statutory preference for adoption, and thus to request a plan that will include ongoing contact with the child. (§ 366.26, subd. (c)(1)(B)(i); *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1007, disagreed with on other ground by *In re Luke H.* (2013) 221 Cal.App.4th 1082, 1090, fn. 6.)

13

visitation. As the juvenile court noted, "Mother, if her circumstances change or she wishes to demonstrate why she's entitled to visits, would have the opportunity to do that . . . ." She can move in family court to modify the order by showing "a significant change of circumstances since the juvenile court issued the order" and demonstrating that modification is in the children's best interests. (§ 302, subd. (d).)

In sum, there is no reason to require a juvenile court, when awarding custody to a previously noncustodial parent and terminating dependency jurisdiction, to find that visitation would be detrimental before declining to provide for it in the exit order. The court here was thus free to exercise discretion to decide if visitation was in the children's best interests. (*In re T.S.* (2020) 52 Cal.App.5th 503, 513 [under § 362.4, " 'court's focus and primary consideration must always be the best interests of the child' "].)

Reviewing the order under that standard, we conclude that the juvenile court acted within its discretion in implicitly finding that visitation would not be in the children's best interests. In this proceeding, Mother showed almost no interest in maintaining contact with her children; she never appeared in court and visited the children just once, for two minutes. Her inaction mirrored the lack of concern she showed by leaving the children locked alone in a room, allegedly overnight, without food, and surrounded by dangerous substances such as an active car battery connected to string lights, air-rifle cartridges, and beer bottles—as well as, on one past occasion, a firearm. Because she never appeared in court, Mother did not express any intent to address her substance abuse problem or demonstrate any effort to take responsibility for her actions. Mother's history of assaulting and threatening Father led to understandable concern that even remote visits could enable her to discover Father's location and try to assault or have others assault

14

him. Any violence that harmed the children's new primary caretaker would of course be traumatically contrary to their best interests—especially if it were to occur in their presence. And because Mother's failure to appear was a key factor in the court's ruling, Mother can potentially show *some* change in the circumstances that led to the exit order simply by taking the initiative to appear in family court (in Mother's home county) in order to demonstrate accountability for her conduct and request visitation.[6]

While Mother's primary claim that the court abused its discretion in denying visitation fails, her subsidiary claim regarding violence towards the children has merit. The record is devoid of evidence or allegations that support the inserted language that substance abuse led Mother "to act violently . . . towards the children." That language, input by the Agency after the hearing, truncates the court's finding "there was a history of violence here directed against Father" and is inconsistent with the court's statement immediately subsequent, "I don't recall that she was ever known to be directly violent with the children." The children's counsel confirmed that no one had alleged Mother was violent to the children or to Father in their presence—a point no one disputed. The court affirmed, "I tend to agree with your comments." On appeal, the Agency does not cite to supporting evidence or assert the finding is supportable.

Considering the currently contested language of the order in the context of the hearing where the object and nature of Mother's violence was not disputed, we suspect that when the Agency drafted the finding that substance abuse had led Mother "to act violently and neglectfully towards the

---

[6] We express no opinion as to what the family court might consider "a significant change of circumstances" to determine if visitation would be in the children's best interests. (§ 302, subd. (d).)

children," and the court executed the encompassing order, both intended the finding to reflect that Mother's substance abuse had led her "to act violently [towards Father] and neglectfully towards the children." But the omission of any reference to Father in the order as filed—both in this action and under a new family court matter number (§ 362.4, subd. (c))—creates the unsupported and prejudicial proposition that Mother's violence extended to the children.

Typically, an appellant is not entitled to relief just because a discrete factual finding is unsupported by substantial evidence; the appellant must also show that the finding is necessary to support affirmance of the challenged order or judgment. (*Brewer v. Simpson* (1960) 53 Cal.2d 567, 584 [" 'only when a judgment rests upon some particular finding for its validity and support [will] the lack of sufficient evidence to support such finding . . . necessitate a reversal' "].) But here, a major factor in the court's exercise of discretion to deny visitation—and in our affirmance of that decision—is Mother's right to move the family court to modify the order if circumstances change. The unsupported finding that substance abuse "led her to act violently . . . towards the children" will unfairly impair Mother's ability to exercise that right by making it significantly harder to persuade a family court judge unfamiliar with the case to find visitation in the children's best interests.

We thus conclude the order must be modified to add the words "towards the father" after the word "violently," so the finding reads, "There is no contact allowed between the mother and the children due to an established pattern of substance abuse by the mother, which has led her to act violently towards the father and neglectfully towards the children." (See Code Civ. Proc., § 43 [authorizing appellate modification of order].) As modified, the order is affirmed.

16

## DISPOSITION

The custody order and final judgment entered on December 26, 2023, is modified to add the words "towards the father" after the words "to act violently" in the second sentence of item 2(a) on the "Reason for No or Supervised Visitation" attachment (Judicial Council form JV-206), so that the sentence reads, "There is no contact allowed between the mother and the children due to an established pattern of substance abuse by the mother, which has led her to act violently towards the father and neglectfully towards the children." After modifying the order, the clerk of the juvenile court shall transmit a copy to the clerk of the Alameda County Superior Court, and that clerk shall, upon receiving the modified order, file it in the same matter in which it filed the original order. As modified, the order and judgment is affirmed.

_____

DESAUTELS, J.

We concur:

_____

STEWART, P.J.

_____

RICHMAN, J.

*In re S.O. et al.* (A169246)